IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY HEARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 6683 |
| | ) | |
| MARCUS HARDY, et al. | ) | Judge Gary Feinerman |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bobby Heard, a prior Illinois Department of Corrections inmate who was paroled in January 2013, brought this civil rights action while he was incarcerated at the Stateville Correctional Center. Several claims and Defendants have been dismissed in prior orders. Remaining are Heard's claims against Stateville Lieutenant Cletus Shaw, Officer Gregory Redd, and Counselor Amy Gomez. Heard alleges that Gomez refused to allow an emergency visit from Heard's father in December 2010 before he passed away; that Redd and Shaw violated the First Amendment by retaliating against him for filing grievances about their refusal to obtain mental health care for Heard after his father's passing; and that Gomez witnessed the retaliation but did not intervene. According to Heard, he filed grievances in December 2010 when Shaw and Redd refused his requests for mental health care. On January 27, 2011, when escorting Heard for a visit with a mental health care provider, Shaw and Redd allegedly overly tightened Heard's handcuffs and, after the visit, made him stand for hours in a shower stall, handcuffed in an uncomfortable position, while they teased and taunted him. Counselor Gomez allegedly witnessed Shaw and Redd's mistreatment of Heard, but did not intervene.

Redd, Shaw, and Gomez have moved for summary judgment. Heard has not responded. The motion is granted.

## BACKGROUND

Consistent with the local rules, Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 51. Despite having been served with a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1, Doc. 52, Heard filed no Local Rule 56.1(b)(3)(B) response. Heard's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). Given Heard's failure to file a Local Rule 56.1(b)(3)(B) response, the facts set forth in Defendants' Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880-81, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers*

*Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Smith v. Lamz,* 321 F.3d 680, 682-83 (7th Cir. 2003). The pertinent facts are as follows.

Heard was incarcerated at Stateville's Northern Reception Center ("NRC") in December 2010 and January 2011. Doc. 51 at ¶ 2. Gomez was Heard's counselor, and Redd and Shaw were assigned to the NRC unit. *Id.* at ¶¶ 4-6. Heard's father passed away on December 8, 2010. *Id.* at ¶ 8. On December 11, 2010, NRC personnel escorted Heard to an office, where he was informed by family members over the telephone of his father's death. *Id.* at ¶ 9. The family members told Heard that Gomez had denied their requests to allow an emergency visit from his father. *Id.* at ¶ 10. The policy at the NRC at that time did not allow NRC inmates to have visitors except for legal and emergency situations. *Id.* at ¶ 11. Gomez had no authority to authorize a visit, and nor did she have the ability to change the policy. *Id.* at ¶ 12.

On December 24 or 25, 2010, Heard argued with Gomez, Redd, and Shaw about his family not being able to visit. Only words were exchanged, and no disciplinary ticket was issued. *Id*. at ¶ 13. On January 12, 2011, Redd and Heard argued about pictures hanging in his cell. Again, there was only an exchange of words, and Heard was not disciplined. *Id.* at ¶ 14.

On January 27, 2011, Heard asked for and received a visit with a crisis team member (a mental health worker). *Id.* at ¶15. Shaw escorted Heard to the visit. *Id.* Heard alleges that his handcuffs were too tight during the escort; however, he neither suffered any physical injury nor sought medical attention due to the handcuffs. *Id.* at ¶¶ 16-17. After Heard visited with a crisis team member, Shaw and Redd escorted him to a shower area of his cell house for two to three hours. *Id.* at ¶ 18. The NRC shower area is sometimes used as a holding area. *Id.* at ¶ 19.

Heard alleges that Shaw and Redd verbally taunted Heard while he was in the shower area and teased him about his father's death. *Id.* at ¶ 20. Heard contends that the teasing and taunting by the officers were in retaliation for his filing of grievances about Defendants. *Id.* at ¶ 23. Gomez allegedly was present while Shaw and Redd teased Heard in the shower area, and although she did not participate in the teasing, she did not intervene or prevent it. *Id.* at ¶ 20. Heard was taken to his cell after being held in the shower area. *Id.* at ¶ 21. Heard continued filing grievances after these events, and he acknowledged at his deposition that Shaw and Redd's actions did not prevent him from filing grievances. *Id.* at ¶ 24.

## DISCUSSION

Heard filed no brief in opposition to Defendants' summary judgment motion. Heard's failure to file a brief "does not ... automatically result in judgment for" Defendants, which "must still demonstrate that [they are] entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (internal quotation marks omitted). Defendants have met their burden.

**I.   Gomez's Alleged Failure to Allow an Emergency Visit:**

The claim that Gomez refused an emergency visit from Heard's father can quickly be resolved. Gomez indisputably had no authority to allow such a visit. Doc. 51 ¶ 12. It follows that she cannot be held liable for not permitting the visit. *See Miller v. Harbough*, 698 F.3d 956, 962 (7th Cir. 2012) (holding that officers do not act with deliberate indifference "if the remedial step was not within their power").

**II.   Shaw and Redd's Alleged Retaliation and Gomez's Alleged Failure to Intervene:**

To survive summary judgment on his retaliation claim, Heard must adduce facts showing "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation

that would likely deter First Amendment activity in the future; and (3) a causal connection between the two." *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (internal quotation marks omitted). On this record, Heard cannot establish that Defendants' actions deterred future First Amendment activity.

Redd and Shaw's alleged retaliatory actions included overly tightening Heard's handcuffs when escorting him to a mental health care visit, making him stand in the NRC shower area for several hours after the visit, and teasing and taunting him about his reaction to his father's death. Not all adverse actions in response to protected First Amendment activity constitute retaliation. "It would trivialize the First Amendment to hold that harassment for exercising the right to free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from the exercise." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). Actions such as an officer holding out her middle finger, sticking out her tongue, and saying to a prisoner that she was going "to get" him did not rise to the level of conduct that would deter a person of ordinary firmness from engaging in future First Amendment activity. *See Sanders v. Salemni*, 2012 WL 353844, *5 (N.D. Ill. Feb. 1, 2012). Nor would an officer's threat to a prisoner that he would be beaten if he filed a grievance deter a prisoner of ordinary firmness from future First Amendment activity, especially if the prisoner actually filed grievances after the threat. *See Boclair v. Beardon-Monroe*, 2012 WL 3835874, *5 (S.D. Ill. Sept. 4, 2012). In *Antoine v. Uchtman*, 275 F. App'x 539 (7th Cir. 2008), the Seventh Circuit held that threats and racist comments by prison guards did not amount to retaliation, since they would not and actually did not deter future grievances from the prisoner. *Id*. at 541.

As in the above-cited cases, Heard cannot establish that Defendants' alleged retaliatory conduct deterred him from future First Amendment activity. Even assuming that Redd and Shaw, in response to Heard's grievances, overly tightened his handcuffs (from which Heard suffered no injury and sought no medical attention), made him stand for hours in NRC's shower area, and teased him about his father's passing, such conduct would not deter a person of ordinary firmness from filing grievances. Indeed, as Heard acknowledged at his deposition, Redd and Shaw's actions did not stop him from continuing to file grievances. Doc. 51-2 at 11 (pp. 43-44 of the deposition). Accordingly, Heard cannot succeed with his retaliation claim against Shaw and Redd. *See Antoine*, 275 F. App'x at 541 ("Antoine does not contend that the guards took any concrete action that dissuaded him from continuing to file grievances; indeed, his complaint and brief reveal that every time a guard made a statement that he deemed racist or threatening, he filed a fresh grievance against that guard. He has not been silenced, and the Constitution does not compel guards to address prisoners in a civil tone using polite language. Prisons may think it well to control guards' manner of speech, but that is for statutes and regulations (or perhaps the common law) rather than constitutional right.").

Because Shaw and Redd's actions did not amount to retaliation, Heard's failure to intervene claim against Gomez cannot succeed. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation.").

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted. With all claims against all defendants resolved, judgment will be entered and the case will be closed.

July 22, 2013

_____
United States District Judge